720                                        80 Mass. App. Ct. 720 (2011)

The James Family Charitable Foundation *v.* State Street Bank and Trust Company.

THE JAMES FAMILY CHARITABLE FOUNDATION *VS.* STATE
STREET BANK AND TRUST COMPANY.

No. 10-P-1616.

Suffolk. September 6, 2011. - October 28, 2011.

Present: MILLS, SMITH, & WOLOHOJIAN, JJ.

*Contract,* Performance and breach, Third party beneficiary. *Practice, Civil,*
Standing. *Gift. Charity.*

In a civil action, the plaintiff foundation had standing to sue for breach of
contract as a third party beneficiary of a custodian agreement between an
individual and the defendant bank, where, given the language contained in
the agreement, the foundation was an intended beneficiary with respect to
instructions that the individual later gave to the bank to transfer certain
shares of stock to the foundation. [723-727]

CIVIL ACTION commenced in the Superior Court Department on
September 17, 2008.

The case was heard by *Margaret R. Hinkle,* J., on motions for
summary judgment, and entry of final judgment was ordered by
her.

*Michael A. Collora* for the plaintiff.

*Paula M. Bagger* for the defendant.

WOLOHOJIAN, J. Hamilton James (James), a client of State
Street Bank and Trust Company (State Street), wished to make
a charitable gift of mutual fund shares to The James Family
Charitable Foundation (foundation). The shares were in the
custody of State Street pursuant to a custodianship agreement
(agreement) between James and State Street that, among other
things, required State Street to transfer assets when instructed to
do so by James. James, through his investment agent, instructed
State Street to transfer the shares to the foundation's broker in
order to effectuate his charitable gift. State Street failed to
initiate the transaction properly, thus delaying the transfer to the

80 Mass. App. Ct. 720 (2011) 721

The James Family Charitable Foundation *v.* State Street Bank and Trust Company.

foundation. The foundation alleges that it consequently was unable to sell the shares until after their value had significantly declined.

The foundation seeks to maintain a breach of contract claim against State Street even though the foundation was not a party to the agreement.[1] The foundation argues that it has standing because it is an intended beneficiary of the custodianship agreement and, as such, is entitled to maintain a claim for breach of the agreement against the promisor (State Street). The judge below disagreed and allowed State Street's motion for summary judgment. We now reverse.

*Background.* In April, 2002, James and State Street entered into the agreement whereby State Street agreed, for a monthly fee, to serve as custodian of certain of James's assets. We find State Street's summary of its obligations under the agreement helpful for these purposes and accordingly set it out here:

> "One of State Street's contractual obligations was to receive James'[s] assets into custody *and transfer them out upon receipt of authorized instructions.* Other obligations of State Street under the Custodianship Agreement includ[ed] acting on Mr. James'[s] investment instructions; collecting the proceeds of sales, maturities, and other dispositions; collecting income, dividends and other proceeds of investments; responding to shareholder actions; responding to information requests from securities issuers; providing account statements and value appraisals; deducting the investment manager's fees; issuing 1099 Forms; making authorized wire transfers; and voting proxies." (Emphasis added.)

Because the agreement contained no termination date, and had no fixed term, State Street's obligations were to continue until one party or the other gave notice of termination.

The agreement itself did not specify which assets were to be placed in State Street's custody. Rather, the agreement provided that State Street would "hold all property turned over to it from

---

[1] The foundation voluntarily dismissed with prejudice its negligent misrepresentation claim after summary judgment was allowed in State Street's favor on the contract claim. The negligent misrepresentation claim is, accordingly, no longer a part of the case.

time to time" by James. Similarly, the agreement did not contain any specific instructions from James. Instead, the agreement provided that State Street would carry out instructions as they were received in the future from James or his authorized investment agent.

From time to time between 2002 and 2007, James[2] instructed State Street to transfer shares of stock to the foundation's account. State Street acted on each of those instructions in a timely and effective manner,[3] except as described below.

By the beginning of February, 2007, James had more than 800,000 shares of Vanguard Emerging Markets Stock Index Fund (VEIEX) in State Street's custody, and he decided to make a charitable gift of these shares to the foundation. Accordingly, on February 13, 2007, James instructed State Street to transfer all of the VEIEX shares in its custody "FOR CREDIT TO THE JAMES FAMILY CHARITABLE FOUNDATION ACCOUNT #[xxxxx]." This instruction was made in writing on a State Street form intended to be used for this purpose. In response to State Street's request on the form for an explanation for the transfer, the following appeared: "GIFT TO JAMES FAMILY CHARITABLE FOUNDATION."

State Street acted on these instructions immediately by correctly completing a letter of instructions. However, instead of sending the letter of instructions to Vanguard as it should have done, State Street mistakenly sent the letter to the foundation's broker. Despite multiple inquiries from James's agent over the next several days as to the status of the transfer, State Street did not discover its error until February 22, 2007. On that day, it sent a second letter of instructions, this time properly directed to Vanguard. For reasons not pertinent here, the shares did not reach the foundation's account until March 1, 2007.[4]

The foundation contends that, had State Street carried out its

---

[2]For convenience, we refer throughout this opinion to James taking certain actions which were in fact taken by his authorized investment agent. This shorthand has no effect or significance on the legal issues in this case.

[3]The facts contained in these two sentences come from paragraph 8 of the complaint, which was admitted by State Street in its answer. Those allegations could thus properly be considered on summary judgment. *Smith* v. *Suburban Restaurants, Inc.*, 374 Mass. 528, 528 (1978).

[4]Although the events between February 22, 2007 (the date State Street

obligations under the agreement when it received James's instructions on February 13, 2007, the foundation would have been able to sell the shares while the price was above twenty-five dollars.[5] The foundation further contends that State Street's breach of its obligations under the agreement caused the foundation to have to sell the shares at a lower price, resulting in a loss of over $1.6 million to the foundation.[6]

2. *Discussion.* The sole issue on appeal is whether the foundation has standing to sue for breach of contract as a third party beneficiary of the agreement between James and State Street. In 1982, our courts adopted the intended beneficiary theory of standing from the Restatement (Second) of Contracts §§ 302-315 (1981). *Rae* v. *Air-Speed, Inc.* 386 Mass. 187, 195-196 (1982). See *Flattery* v. *Gregory*, 397 Mass. 143, 148 (1986) (§ 302 and all associated sections of Restatement [Second] of Contracts were adopted at same time). Although we have had occasion to discuss the doctrine in the thirty years since its adoption, those occasions have been infrequent and have not involved facts such as presented here. We accordingly begin by surveying the doctrine generally.

The Restatement (Second) of Contracts recognizes the right of an intended beneficiary of a contract to sue for its enforcement or breach: "A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty." Restatement (Second) of Contracts § 304. This statement is a modern articulation of a principle we have long recognized in Massachusetts, namely that "when one person, for a valuable consideration, engages with another, by simple contract, to do some act for the benefit of a third, the latter, who would enjoy the

acted to rectify its error), and March 6, 2007 (the date the foundation sold the shares), are not pertinent to whether the foundation has standing to pursue a breach of contract claim, they will be relevant on remand, if for no other reason than that they bear on damages.

[5]VEIEX shares traded from February 15, 2007, through February 23, 2007, at above twenty-five dollars per share. The foundation contends that it would have sold the shares during that period because James had instructed that the shares were to be sold by the foundation upon receipt.

[6]Similarly, the foundation contends that it was required to sell at the lower price, rather than to hold the shares until the price rose, because of James's instruction to sell upon receipt.

benefit of the act, may maintain an action for the breach of such engagement." *Brewer* v. *Dyer*, 7 Cush. 337, 340 (1851), quoted with approval in *Rae* v. *Air-Speed, Inc.*, *supra* at 195.

In contrast to an intended beneficiary, an incidental beneficiary obtains no right to enforce the contract. Restatement (Second) of Contracts § 315.[7] To determine whether a beneficiary[8] is intended, rather than merely incidental, we look to the intent of the parties. *Markel Serv. Ins. Agency, Inc.* v. *Tifco, Inc.*, 403 Mass. 401, 405 (1988). As set out in the Restatement:

> "(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

> "(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

> "(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."

Restatement (Second) of Contracts § 302. There is no dispute that James (the promisee) intended to give the foundation the benefit of the promised performance (the transfer of the shares). Subsection (b) is thus clearly satisfied. The issue, therefore, is whether giving the foundation a right to performance under the contract is "appropriate to effectuate the intention of the parties."

"We look at the language and circumstances of the contract for indicia of intention" for purposes of determining whether a particular person is an intended beneficiary. *Anderson* v. *Fox Hill Village Homeowners Corp.*, 424 Mass. 365, 366 (1997). The intent of the contracting parties must be "clear and definite." *Lakew* v. *Massachusetts Bay Transp. Authy.*, 65 Mass. App. Ct. 794, 798 (2006), quoting from *Anderson* v. *Fox Hill Village*

---

[7]Section 315 provides: "An incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee."

[8]"Where performance [of a promise] will benefit a person other than the promisee, that person is a beneficiary." Restatement (Second) of Contracts § 2(4).

*Homeowners Corp., supra* at 366-367. That said, there is no requirement that the intended beneficiary be identified by name in the contract or even that the intended beneficiary be identified at the time the contract is entered into. See *Flattery* v. *Gregory*, 397 Mass. at 149; Restatement (Second) of Contracts § 308 ("It is not essential to the creation of a right in an intended beneficiary that he be identified when a contract containing the promise is made"). "The fact that a beneficiary cannot be identified when the contract is made may have a bearing on the question whether the promisee intended to make a gift to him or otherwise to confer on him a right to the promised performance, and thus may determine whether he is an intended beneficiary or an incidental beneficiary. It may also bear on the question whether the right created is revocable or not. But there is no requirement of identification prior to the time for enforcement of the right." *Id.* § 308 comment a (citations omitted).

One need not be a beneficiary of every provision of the contract in order to be an intended beneficiary with enforceable rights; it is enough to be the intended beneficiary of the promise one is seeking to enforce. See *Ayala* v. *Boston Hous. Authy.*, 404 Mass. 689, 699 (1989) (plaintiffs were intended beneficiaries of contracts to extent they dealt with dangers of lead paint, but not to all aspects of contracts); *St. Charles* v. *Kender*, 38 Mass. App. Ct. 155, 157 (1995) (plaintiff was intended beneficiary of contractual provisions that described nature of medical services to be provided, but not to all aspects of contract).

With these general principles in mind, we turn to their application to the facts of this case, keeping in mind that summary judgment is the context in which we do so. "If a contract . . . is unambiguous, its interpretation is a question of law that is appropriate for a judge to decide on summary judgment. . . . Where, however, the contract . . . has terms that are ambiguous, uncertain, or equivocal in meaning, the intent of the parties" may depend on disputed facts requiring a trial. *Seaco Ins. Co.* v. *Barbosa*, 435 Mass. 772, 779 (2002). Neither party has argued that the contract is ambiguous, and our own review convinces us that the language of the agreement, as supplemented by the subsequent transfer instructions from James, is unambiguous and that, as a result, we may determine whether the foundation was an intended beneficiary as a matter of law.

The agreement established an ongoing arrangement between James (as promisee) and State Street (as promisor) whereby, among other things, State Street agreed to transfer assets in accordance with instructions from James in the future. State Street obligated itself to carry out future instructions from James, even though the details were not known at the time the agreement was entered into and would not be known until the instructions were received. Once James gave such instructions, they supplemented the agreement and identified State Street's obligations with respect to the particular asset to be transferred. In other words, once received, the instructions formed an integrated whole with the agreement. We look, therefore, to the two documents together to determine whether the foundation was an intended beneficiary under the agreement with respect to the instructions given by James in February, 2007.

As we have set out above, the foundation need not be an intended beneficiary of every undertaking in the agreement. It need only be an intended beneficiary of the promise it is seeking to enforce. In this case, that promise is contained in the instructions from James to State Street to transfer the VEIEX shares to the foundation. Those instructions clearly and definitely identified the foundation as the recipient of the transfer and also stated that the purpose of the transfer was to make a charitable gift to the foundation. There is no doubt that James "intend[ed] to give the [foundation] the benefit of the promised performance." Restatement (Second) of Contracts § 302(1)(b). It makes no difference that the foundation was not identified as an intended beneficiary at the time the agreement was entered into. The nature of the arrangement was that State Street agreed to carry out future instructions as they were received, on terms that would not be given until the future, and for the benefit of those who would only later be identified. Although we would reach the same result had this been the first time James instructed State Street to make a transfer for the benefit of the foundation, the case is all the stronger when we consider that he had given such instructions several times before. The foundation was not unknown to State Street as an intended beneficiary of James's instructions pursuant to the agreement.

We conclude that the foundation has standing to pursue a

breach of contract claim against State Street. Our holding here is limited to standing; we expressly note that we do not address whether State Street breached the agreement and, if so, whether the breach caused the foundation any loss. Those issues remain to be resolved on remand.

The portion of the judgment awarding summary judgment to State Street on the plaintiff's breach of contract claim is reversed, and the case is remanded to the Superior Court for further proceedings. The judgment is otherwise affirmed.

*So ordered.*