Sanders, Janet L., J.
This is an action seeking to enforce a Conservation Restriction imposed on real property located in Duxbury, Massachusetts (the Premises). Plaintiffs are the Wildlands Trust of Southeastern Massachusetts, Inc. (Wildlands Trust) and the John and Cynthia Reed Foundation (the Foundation). Plaintiffs allege that the current owner of the land, defendant Cedar Hill Retreat Center, Inc. (Cedar Hill), is engaging activities in violation of the Conservation Restriction. Also named as a defendant is the Ballou Channing District Unitarian Universalist Association, Inc. (Ballou Channing), the original owner of the land and the Grantor of the Conservation Restriction. Plaintiffs allege that the Foundation made a $3 million gift to Ballou Channing in exchange for Ballou Channing’s agreement to create the Conservation Restriction and to use the Foundation’s donation to preserve the Premises in conformity with that restriction (the “Gift Agreement”).
The case is now before this Court on the defendants’ motions to dismiss pursuant to Mass.R.Civ.P. 12(b)(1) and Mass.R.Civ.P. 12(b)(6). Ballou Channing moves to dismiss all counts asserted against it; Cedar Hill moves to dismiss all but one count against it. Some of the issues raised by these motions would benefit from discoveiy and cannot be decided at this early stage in the case. Still, there are certain claims that are not supported by the facts alleged in the Complaint or the applicable law and which must therefore be dismissed, for reasons set forth below.
BACKGROUND
The Complaint contains the following allegations which, for purposes of these motions, are assumed to be true. The Foundation is a private charitable foundation created by John and Cynthia Reed. The Reeds are abutters to the Premises, which consists of 12.23 acres of land. Ballou Channing is a nonprofit religious corporation organized pursuant to Chapter 180 of the General Laws. Ballou Channing acquired the Premises in 1980 through a Deed of Gift that imposed certain restrictions on its use. Located on the Premises are a building and improvements that have historically been known as the Cedar Hill Retreat Center. Ballou Chan-ning would periodically permit the center to be used by its member congregations.
In 2007, the Reeds learned that the restrictions imposed on the Premises through the Deed of Gift were to expire within the next couple of years. The Reeds wished to preserve the Premises in conformity with those original restrictions; negotiations with Ballou Channing ensued. Ultimately, the Foundation and Ballou Channing entered into what the Complaint calls the “Gift Agreement,” whereby the Foundation would make a contribution of $3 million in return for the creation of a Conservation Restriction. It was understood between the parties that the $3 million donation would alleviate the need to engage in any commercial activities on the Premises and cover what was anticipated to be Ballou Channing’s “annual operating expenses” in maintaining it. Ballou Channing had represented to the Foundation that those expenses were about $100,000 to $150,000 per year. *53 There is no allegation in the Complaint that the Gift Agreement was reduced to writing.
The Conservation Restriction was reduced to writing and is attached to the Complaint as Exhibit A. It is dated October 17, 2008 and was recorded with the Plymouth County Registry of Deeds. Ballou Channing is named as the Grantor in the Conservation Restriction; the Grantee was the plaintiff Wildlands Trust, a non-profit organization dedicated to conservation and preservation of land in Southeastern Massachusetts. The stated purpose of the Conservation Restriction is to preserve the Premises “in its predominately natural, scenic wooded and open space condition” and to prohibit any use of the Premises not in conformity with that purpose. Section m of the Conservation Restriction sets forth what uses are prohibited and what are permitted. Section VIII (entitled “Assignability”) makes it clear that the burden the Conservation Restriction imposes “shall run with the Premises in perpetuity” and “shall be enforceable against Grantor and the successors, licensees and assigns of the Grantor holding any interest in the Premises.”
In January 2009, Ballou Channing created Cedar Hill, a 501(c)(3) organization, to own and operate the Premises. Ballou Channing transferred the Premises to Cedar Hill by a Quit Claim Deed which specifically references the Conservation Restriction. The Quit Claim Deed also states that the Premises are subject to an easement that granted each congregation that is a member of Ballou Channing the right to use the Premises so long as that use does not violate any term of the Conservation Restriction. The Quit Claim Deed is attached to the Complaint as Exhibit B. It was recorded with the Plymouth County Registry of Deeds on December 31, 2009.
Neither the Quit Claim Deed nor the Conservation Restriction mentions the Foundation’s $3 million gift. The plaintiffs contend, however, that the parties intended that the money would be transferred over to any subsequent owner of the premises so as to maintain the land in conformity with the limitations on its use. Ballou Channing knew this, but when it conveyed the Premises to Cedar Hill, Ballou Channing kept $1.6 million of the $3 million gift for itself and only conveyed $1.4 million to Cedar Hill.
Cedar Hill used a portion of the $1.4 million to renovate a structure on the Premises and proceeded to use the building as a rental properly, advertising its availability to the public for overnight stays at a fee. In collecting fees for this use and permitting activities on the Premises such as food preparation, alcohol consumption, weekend family reunions, and other social uses, Cedar Hill has (according to the Complaint) violated the terms of the Conservation Restriction. The Complaint alleges that Ballou Channing is aware of Cedar Hill’s violations and has refused to take steps to end them. The Complaint does not allege that Ballou Channing has through the use of its easement itself violated the Conservation Restriction.
DISCUSSION
The standard that this Court applies to the instant motions is well established. This Court is required to accept as true the allegations contained in the Complaint, drawing all inferences in favor of the plaintiff. This deference to the nonmoving parly, however, is not unbounded. To withstand a motion to dismiss under Mass.R.Civ.P. 12(b)(6), the Complaint must contain “allegations plausibly suggesting (not merely consistent with) an entitlement to relief . . .” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). Although a Complaint need not set forth detailed factual allegations, a plaintiff is required to present more than labels and conclusions and must raise a right to relief “above the speculative level.” Id.
The Complaint in the instant case alleges the following counts, each of them brought by both plaintiffs and asserted against both defendants: breach of the Gift Agreement (Count I); breach of the Conservation Restriction (Count II); promissory estoppel (Count III); unj ust enrichment (Count IV); and violation of Chapter 93A (Count V). Ballou Channing’s motion targets all five counts, whereas Cedar Hill seeks to dismiss all counts except for Count II.[1] As to that count, Cedar Hill seeks to dismiss the claim insofar as it is asserted by the Foundation. Because there is substantial overlap in the arguments that each defendant makes, this Court will discuss each count separately rather than divide the discussion up between the two motions.
A. Breach of the Gift Agreement (Count I)
According to the Complaint (as read in the light most favorable to the plaintiffs), the Foundation entered into an agreement with Ballou Channing whereby Ballou Channing would create the Conservation Restriction and would use a $3 million donation by the Foundation to maintain the land so as “to preserve the ecological and aesthetic condition of the Premises in perpetuity.” Although Ballou Channing did indeed create the Conservation Restriction, it did not use the $3 million donation as promised, instead creating a separate entity (Cedar Hill) to hold title to the land, then keeping at least $1.6 million of the donated funds to use for its own purposes unrelated to conserving the Premises. This Court concludes that, notwithstanding Ballou Channing’s arguments to the contrary, this does state a claim against Ballou Chan-ning. It does not state a claim as to Cedar Hill, however, who is not alleged to be a party to the Gift Agreement and cannot be sued on the theory that it was a third-party beneficiary.
1. Standing
Both defendants contend that the plaintiffs do not' have standing to bring this claim, which arises from the allegations that Ballou Channing failed to use the *54 Foundation’s $3 million donation as promised. In support, plaintiffs rely on G.L.c. 12, §8, which states that the Attorney General “shall enforce the due application of funds given or appropriated to public charities within the commonwealth and prevent the breaches of trust in the administration thereof.” That statute has been interpreted to bar individual plaintiffs from challenging the manner in which a charitable institution has managed or used its money. See e.g., Garland v. Beverly Hospital Corp., 48 Mass.App.Ct. 914 (1999) (plaintiff who had donated funds to defendant hospital had no standing to claim that defendant misused funds); Weaver v. Wood, 425 Mass. 270 (1997) (individual members of Christian Science church had no standing to contest decision of the defendant to expand its publishing activities into electronic media and use church funds in connection therewith); Dillaway v. Bulton, 256 Mass. 568 (1926) (trustees under a will that bequeathed money to defendant had no standing to bring claim that money was being used contrary to the purposes set forth in the will itself); Judkins v. Hyannis Public Library Association, 302 Mass. 425 (1939) (same). In each of those cases, the appellate courts held that only the Attorney General can bring an action alleging the misuse of charitable assets. The courts reasoned that G.L.c. 12, §8 conferred exclusive power on the Attorney General to represent those who assert a beneficial interest in a charity. “It has not left it to individuals to assume this duty, or even to the court to select a person for its performance.” Weaver v. Wood, 425 Mass, at 275, quoting Burbank v. Burbank, 152 Mass. 254, 256 (1890).
The Supreme Judicial Court has recognized an exception to this rule, however, where the plaintiff asserts a special interest distinct from the more general public interest protected by the Attorney General. That exception was most clearly defined by the Supreme Judicial Court in Maffei v. Roman Catholic Archbishop of Boston, 449 Mass. 235 (2007), which arose from the defendant’s decision to close a church in Wellesley. The plaintiffs there were members of a family that had provided land on which the church was built. The land had been given to the defendant on the specific condition that it be used as the site of a church. Joining in the case as a co-plaintiff was a parishioner who had given money to the defendant based on its representation that it would use the money for that same purpose. Although the SJC ultimately agreed with the lower court that the case had to be dismissed because it challenged decisions protected by the First Amendment, it nevertheless concluded that all of the plaintiffs did have standing. It reasoned that the plaintiffs’ claims were “readily distinguishable from those of the general class of parishioner-beneficiaries” in that each of the plaintiffs had made contributions to the defendant — land in one case and money in another — which they would not have made had they known that the defendant would close the church. ‘These claims are personal, specific and exist apart from any broader community interest in keeping [the church] open.” 449 Mass, at 245.
In the instant case the Complaint (read generously) alleges that the Foundation made the $3 million donation for the specific purpose of ensuring that the Premises would be maintained in a certain way. Ballou Channing breached that agreement by failing to use the donation as promised. Had the Foundation known that Ballou Channing would keep a large portion of that money for itself to use for purposes unrelated to conserving the land, that donation would not have been made. The Foundation thus has a specific interest that is unique to it and distinct from the interests of the public or of Ballou Channing’s congregation members. That is enough in this Court’s view to confer standing upon the Foundation. Moreover, if the funds were intended for Wildlands Trust, then it can join with the Foundation as a plaintiff in asserting a claim against Ballou Channing for breach of the Gift Agreement, provided that sufficient facts surface in the course of discovery to show that it was the intended (as opposed to incidental) third-party beneficiary of the Gift Agreement.[2]
This Court does not reach the same conclusion on Count I insofar as it is asserted against defendant Cedar Hill, however. Cedar Hill was not a parly to the Gift Agreement. It therefore made no promises that could be breached. That it is bound by the Conservation Restriction as a result of purchasing the land does not mean that it was obligated to spend money that it received from Ballou Channing in any particular way. Although plaintiffs contend that Cedar Hill is properly named as a party because it was a third-party beneficiary of the Gift Agreement, they rely on case law that permits a person who is the intended beneficiary of a contract entered into by others to maintain an action where he or she has been deprived of that benefit. See James Family Charitable Foundation v. State Bank and Trust Co., 80 Mass.App.Ct. 720, 724-25 (2011) (discussing intended beneficiary theory as set forth in Restatement (Second) Contracts §§302-315.) Here, the plaintiffs attempt to use that doctrine to bring Cedar Hill in as a defendant. This Court sees no legal basis for such a claim and accordingly orders that Count »I be dismissed as to Cedar Hill.
2. Statute of Frauds
Even if the plaintiffs have standing, Ballou Chan-ning contends that CountI must be dismissed because the Complaint contains no allegation that the Gift Agreement was in writing and is thus not enforceable because of the Statute of Frauds. G.L.c. 259, §1. That statute requires a writing, signed by the party to be charged, if the contract cannot be performed in one year. Here, the Complaint alleges that the $3 million donation was to be used to preserve the land in “perpetuity”; the Gift Agreement therefore could not be performed within one year, so that the Statute of *55 Frauds does indeed apply. The question is whether it is appropriate at this early stage in the case to dismiss Count I on this basis. This Court concludes that it is not.
In so concluding, however, this Court is not persuaded that the writing necessaiy to satisfy the Statute of Frauds is the Conservation Restriction, as plaintiffs seem to suggest. Ballou Channing, in compliance with its promise to the Foundation, did create the Conservation Restriction; the breach of the Gift Agreement consisted of the manner in which Ballou Channing used the $3 million donation. The Conservation Restriction makes no mention of that donation much less that any amount of money was earmarked for use in connection with it. In opposing Ballou Channing’s Motion, the plaintiffs maintain that discovery will indeed turn up documents sufficient to satisfy the Statute of Frauds and that they should at least be given an opportunity to conduct that discovery, particularly since the Gift Agreement as described in the Complaint was “extensively negotiated” over a period of months. Whether they will be successful or not can be tested by way of a motion for summary judgment.
B.Breach of Conservation Restriction (Count II)
The Complaint alleges that Cedar Hill, the current owner of the Premises, has violated the Conservation Restriction by operating the Premises as a commercial revenue generating enterprise and engaging in other activities that conflict with maintaining the Premises in its existing and natural condition. Ballou Channing is “fully aware” of these violations but has refused to end them. This is sufficient to state a claim against Cedar Hill; it is not enough to state a claim against Ballou Channing, however.
The Conservation Restriction is an equitable servitude that runs with the land it encumbers; it is not a personal obligation that remains with the original grantor after the land is conveyed to another. See Sullivan v. O’Connor, 81 Mass.App.Ct. 200, 213-14 (2012). Thus, although Ballou Channing was the grantor, its obligations under that restriction ended once it conveyed the premises to Cedar Hill. In opposing dismissal of this count as to Ballou Channing, plaintiffs rely on Section VIII of the Conservation Restriction which states: “(t]he burden of this Conservation Restriction shall run with the Premises in perpetuity and shall be enforceable against the Grantor and the successors, licensees and assigns of Grantor holding any interest in the Premises.” This is standard language, however, typical of a restriction which runs with the land. It makes it clear that successive owners of the Property will be bound by the restriction, but does not change the long-standing rule that equitable servi-tudes are not enforceable against the original owner after the land is conveyed to others. Although Ballou Channing maintains an easement on the Premises, the Complaint does not allege that Ballou Channing’s use of that easement has violated the Conservation Restriction. Because the Complaint does not contain sufficient factual allegations to hold Ballou Channing responsible for a breach of the Conservation Restriction, this Court concludes that so much of Count II as is asserted against Ballou Channing must be dismissed.
Cedar Hill separately moves to dismiss so much of Count II as is asserted by the Foundation on the grounds that the Foundation was not a party to the Conservation Restriction, the Grantee being Wildlands Trust. This Court agrees. A conservation restriction may be enforced by its holder, or the Attorney General. See G.L.c. 184, §32. Such restrictions may not be enforced by others. See e.g., Kelley v. Cambridge Historical Comm’n, 84 Mass.App.Ct. 166, 174-75 (2013); Prime v. Zoning Board of Appeals of Norwell, 42 Mass.App.Ct. 796, 803 (1997). Although the Foundation argues that it has standing as a third-party beneficiary, the language of the Conservation Restriction does not support that argument. Section IV.A grants only Wildlands Trust (and its successors and assigns) the authority to enforce it. See also Section A, VIL C. As to its beneficiaries, the Conservation Restriction makes it clear that its purpose was not to confer a benefit on any particular entity or person beyond the holder of the restriction but to preserve and protect the Premises.
C.Promissory Estoppel and Unjust Enrichment (Counts III and IV)
As described in plaintiffs’ Memorandum in Opposition, Counts III and IV are alternative grounds for the claims relating to the $3 million gift to Ballou Chan-ning. That is, if the Gift Agreement is not enforceable as a contract, plaintiffs seek to recover under one or both of these equitable theories. As explained above, this Court has concluded that Count I survives as to Ballou Channing but not as to Cedar Hill, who was not a party to the Gift Agreement. Thus, Counts III and IV also survive as to Ballou Channing. They must be dismissed as asserted against Cedar Hill, however. That Ballou Channing kept money that it should have given to Cedar Hill may be a basis for plaintiffs to recover against Ballou Channing but not against Cedar Hill, which promised nothing.
D.Violation of Chapter 93A (CountV)
The defendants makes several arguments as to why this Count should be dismissed, all of which are meritorious. First, they contend that they are both nonprofit charitable entities that at most agreed to certain restrictions on land use in return for Ballou Channing’s receipt of a charitable donation; they therefore cannot be said to be engaged in “trade or commerce,” a prerequisite for the application of Chapter 93A. As plaintiffs point out, there are indeed occasions where a nonprofit institution otherwise exempt from Chapter 93A “has inserted itself into the marketplace in a way that makes it only proper that it *56 be subject to the rules of ethical behavior and fair play.” See e.g., Linkage Corp. v. Trustees of Boston University, 425 Mass. 1, 26 (1997); see also, Miller v. Risk Management Foundation of Harvard Medical Institutions, Inc., 36 Mass.App.Ct. 411, 416 (2004). As described in the Complaint, the conduct of the defendants vis a vis the plaintiffs is not of the type which falls within the purview of Chapter 93A. Although the Complaint does allege that, in breach of the Conservation Restriction, Cedar Hill engaged in commercial activities, this allegation does not support the notion that Cedar Hill was engaged in trade or commerce in its dealings with the plaintiffs. Cedar Hill became subject to that restriction only because it took title to the Premises from Ballou Channing; it did not engage in any business transaction with the plaintiffs. Second, the defendants note that the plaintiffs failed to send a demand letter to defendants which is a prerequisite to an action under G.L.c. 93A, §9. Although a demand letter is not required to maintain an action under G.L.c. 93A, §11, there is nothing in the Complaint to suggest that plaintiffs were engaged in trade or commerce as required by that section. Finally (and perhaps most important), the allegations in the Complaint fail to add up to the kind of unfair and deceptive conduct that is prohibited by Chapter 93A. At bottom, this is a breach of contract action and nothing more.
CONCLUSION AND ORDER
For all the foregoing reasons, this Court concludes that the Ballou Channing’s Motion to Dismiss must be ALLOWED as to Counts II and V but is otherwise DENIED so that it remains as a defendant in Counts I, m and IV. As to Cedar Hill’s Motion, it is ALLOWED, so that only Count II remains as to Cedar Hill and only to the extent that count is asserted by Wildlands Trust.

 Although in its original motion, Cedar Hill did not appear to be requesting dismissal of Count V as asserted by the Foundation, it was clear from the hearing that the motion was intended to target that Count as well.

 his issue can be revisited by way of a motion for summary judgment when more details about the Gift Agreement have been revealed. In contrast to an intended beneficiary, an incidental beneficiary obtains no right to enforce a contract. Restatement (Second) Contracts §315. To determine whether a beneficiary is intended, rattier than merely incidental, the court must look to the intent of (he parties, taking into account the language of the contract and the circumstances surrounding its formation. See James Family Charitable Foundation v. State Street Bank and Trust Co., 80 Mass.App.Ct. 720 (2011), and cases cited therein.