On October 1, 2011, Quincy Medical Center, a Steward Family Hospital, Inc. (Steward), acquired substantially all of the assets of the financially distressed Quincy Medical Center, Inc. (QMC) and its affiliates through a complicated asset purchase agreement (APA). In the present action, Apurv Gupta and Victor Munger (plaintiffs), who were not parties to the APA, seek to recover wages and severance pay from Steward as third-party beneficiaries. Ruling on cross motions, a judge of the Superior Court allowed Steward's motion for summary judgment and dismissed the complaint. We affirm.[3]
1. Facts. The case turned on undisputed facts, which we set forth as necessary to frame the legal issues presented. QMC's primary asset was Quincy Medical Center, a nonprofit acute care facility that served as a community hospital (hospital). At the time of the sale, the hospital, one of the largest employers in the surrounding area, employed over one thousand individuals.[4]
On July 1, 2011, the day after signing the APA, QMC filed for bankruptcy protection, operating as a debtor in possession until the closing. QMC sought to sell the hospital to Steward as a going concern in order to maximize the value of its assets for the benefit of its creditors. The proposed sale of QMC was subject to the approval, not only of the Bankruptcy Court, but also of the Attorney General and the Department of Public Health. See G. L. c. 180, § 8A(d )(1). After an in-depth investigation and review, QMC received the necessary regulatory approvals. The Bankruptcy Court also approved the sale, finding that it was in the best interests of QMC, "its estates, its creditors, and other parties in interest."
Following the closing of the sale on October 1, 2011, and the confirmation of QMC's plan of reorganization, the plaintiffs sought to recover severance benefits against QMC. A judge of the United States Bankruptcy Court for the District of Massachusetts denied the plaintiffs' motions for their claims to be allowed as administrative expenses. The bankruptcy judge, however, treated the plaintiffs' "motions as seeking relief in the alternative" against Steward for breach of contract, and subsequently ruled in favor of the plaintiffs, ordering Steward to pay the claims.[5] See In re Quincy Med. Center, Inc., 479 B.R. 229, 237 (Bankr. D. Mass. 2012).
QMC had employed Gupta and Munger as senior executives pursuant to written agreements.[6] Steward never made an offer of employment to either plaintiff. Between the date that the APA was executed and the closing, Steward's attorney told QMC's attorneys on numerous occasions that Steward would not employ the plaintiffs.[7]
In the week before the sale closed, Mark O'Neill, the interim chief executive officer of QMC, expressly informed both plaintiffs that Steward would not be offering them positions. Neither plaintiff received the letter sent to the hospital employees confirming their continued employment postclosing. Munger took the final two work days before the closing as vacation days, and provided his contact information to O'Neill, among others. In a September 28, 2011, electronic mail message, Gupta stated to Munger that he would be "moving on as well, but was asked not to share the news until October 1, 2011."
By letters issued from the chair of QMC's board of trustees, QMC terminated the plaintiffs' employment, effective October 1, 2011. Within one week, QMC provided the plaintiffs with checks for their accrued vacation time. At no time did QMC seek to enforce the APA employment-related provisions on behalf of the plaintiffs.
2. Standard of review. The decision to grant summary judgment is reviewed de novo. See Niles v. Huntington Controls, Inc., 92 Mass. App. Ct. 15, 18 (2017). The question for evaluation is "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." Ibid., quoting from Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). See Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974).
3. Discussion. We begin by noting that we find nothing ambiguous, uncertain, or equivocal about the contract language at issue. As a result, we may decide whether the plaintiffs were intended beneficiaries of the APA as a matter of law. See James Family Charitable Foundation v. State St. Bank & Trust Co., 80 Mass. App. Ct. 720, 725 (2011).
We must construe the APA "as a whole, in a reasonable and practical way, consistent with its language, background, and purpose," Balles v. Babcock Power Inc., 476 Mass. 565, 578 (2017), quoting from Downer & Co., LLC v. STI Holding, Inc., 76 Mass. App. Ct. 786, 792 (2010), mindful that, as a general rule, "contracting parties 'bargain and agree for themselves and only incidentally for third persons."' Macksey v. Egan, 36 Mass. App. Ct. 463, 468 (1994), quoting from F.W. Hempel & Co. v. Metal World, Inc., 721 F.2d 610, 614 (7th Cir. 1983).
The plaintiffs' case hinges on three provisions of the APA, which they claim demonstrate they were third-party beneficiaries entitled to enforce its provisions. The principal provision upon which the plaintiffs rely provides, in relevant part:
"9.1 Offers of Employment. Not later than ten (10) Business Days prior to the Closing, Purchaser shall offer employment by Purchaser to each of the Employees who remain employed by Seller as of a recent date, as specified by Seller to Purchaser at least three Business Days in advance of Purchaser commencing delivery of such offers of employment, such employment to commence immediately following the Closing. Seller shall deliver to Purchaser with such listing of Employees as of such date a reconciliation of such list with the list of Employees delivered to Purchaser pursuant to Section 5.14. Purchaser shall likewise deliver as soon as practicable such an offer to any individual not included on such list but who is an Employee as of the Closing Date. Each such offer of employment shall be at the same salary or hourly wage rate and position in effect immediately prior to the Closing. Such individuals who accept such offer of employment are hereinafter referred to as the 'Transferred Employees.' "
Here, the plaintiffs' names appeared on the lists of active QMC employees delivered to Steward. By operation of § 9.1, Gupta and Munger contend, they became Transferred Employees of Steward on October 1, 2011.[8]
To recover on a third-party beneficiary theory, the plaintiffs were required to show that QMC and Steward intended to give them the benefit of the promised performance. See Anderson v. Fox Hill Village Homeowners Corp., 424 Mass. 365, 366 (1997) ; Lakew v. Massachusetts Bay Transp. Authy., 65 Mass. App. Ct. 794, 797-798 (2006). The requisite intention to bestow third-party beneficiary status on particular persons must be "clear and definite." James Family Charitable Foundation v. State St. Bank & Trust Co., 80 Mass. App. Ct. at 724. Under well-established Massachusetts law, QMC and Steward were entitled to disclaim, by agreement, any liability to third parties who would benefit by the performance of the contract. See Restatement (Second) of Contracts § 302 (1981), adopted by the Supreme Judicial Court in Rae v. Air-Speed, Inc., 386 Mass. 187, 194-195 (1982).[9] See Volpe Constr. Co. v. First Natl. Bank of Boston, 30 Mass. App. Ct. 249, 256-257 (1991), quoting from 4 Corbin, Contracts § 777, at 25 (1951) ("[I]t is plain that 'if two contracting parties expressly provide that some third party who will be benefited by performance shall have no legally enforceable right, the courts should effectuate the expressed intent by denying the third party any direct remedy' ").
Unquestionably, QMC and Steward intended to confer benefits on the employees. However, the language and structure of the APA established that QMC and Steward elected not to give the employees enforceable rights. Section 13.8 of the APA expressly provided that with exceptions not applicable here, there were "no third-party beneficiaries" of the APA.[10] In light of this unambiguous provision specifically disclaiming third-party beneficiary rights "in any Person," the plaintiffs cannot demonstrate that QMC and Steward "clearly and definitely" intended to make them third-party beneficiaries of the contract.[11] See Cumis Ins. Soc., Inc. v. BJ's Wholesale Club, Inc., 455 Mass. 458, 464 (2009) ("Where the parties have expressly and unambiguously stated an intention to exclude third-party beneficiaries, that intent is controlling").
We disagree with the plaintiffs' contention that no one but the employees could have benefited from the employment-related promises. QMC's goal was to obtain the highest sale price for the hospital through its sale as a going concern. To achieve that goal, QMC needed to retain a stable workforce to continue its business operations until the sale was consummated. As the purchaser, Steward, a for-profit corporation, had an interest in minimizing the business disruptions and in the orderly transfer of operations. The employment-related provisions served the mutual interests of both QMC and Steward.
If we were to adopt the plaintiffs' interpretation of the APA, we would be required to ignore the express disavowal of third-party rights as well as the phrase "except as provided below" appearing in § 13.8. We are persuaded that a construction that harmonizes all provisions of the contract is more appropriate. At most, the employees were incidental beneficiaries lacking rights to enforce the agreement. See James Family Charitable Foundation v. State St. Bank & Trust Co., 80 Mass. App. Ct. at 724. We also have considered the case law from other jurisdictions relied upon by the plaintiffs, and find it inapposite or unpersuasive.
Pursuant to count V, the judge was required to declare the rights of the parties. See Dupont v. Dracut, 41 Mass. App. Ct. 293, 297 (1996). A declaration was not issued here. Accordingly, the judgment shall be modified to declare that the plaintiffs were not third-party beneficiaries with standing to enforce the provisions of the APA. As so modified the judgment is affirmed.
So ordered.
As so modified judgment affirmed.

On appeal, the plaintiffs focus exclusively on counts III-V stating claims of breach of contract and seeking declaratory relief against Steward. Their Wage Act claims (counts I-II) were dismissed below and are deemed waived.

The employees were responsible for providing medical care to the hospital patients, maintaining the facility, and managing and administrating its business operations and financial affairs. Union employees comprised eighty-five percent of QMC's workforce.

A judge of the United States District Court for the District of Massachusetts subsequently vacated that decision on the ground that the Bankruptcy Court lacked subject matter jurisdiction over the claims, prompting the plaintiffs to file the instant action. The United States Court of Appeals for the First Circuit recently affirmed the District Court decision. See Gupta v. Quincy Med. Center, 858 F.3d 657 (1st Cir. 2017).

Gupta was QMC's senior vice president for clinical affairs and the chief medical officer, while Munger was QMC's vice president of human resources. Under QMC's executive severance policy, the plaintiffs were entitled to a minimum of six months of severance pay if terminated without cause.

Under § 2.2(b) of the APA, Gupta's employment contract was expressly identified as an asset excluded from the sale. Section 2.4(a) of the APA provided that Steward "will not assume or be liable for any Excluded Liabilities [of QMC, including] all Liabilities associated with or arising with respect to the Excluded Assets."

Pursuant to §§ 5.14(c) and 9.2(a) of the APA, Steward guaranteed to the Transferred Employees all wages and benefits for a minimum of three months following the closing; and in the event Steward terminated any employees at or following the closing, Steward agreed to "be liable to any of such persons for severance ... pay or any other payments otherwise due them as employees of ... [QMC] (including accrued salary or vacation in accordance with normal policies)."

Restatement (Second) of Contracts § 302(1) states that, "(u)nless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance" (emphasis supplied).

Section 13.8 (captioned "Binding Effect; No Third-Party Beneficiaries; Assignment") of the APA provides, in relevant part: "Nothing in this Agreement shall create or be deemed to create any third party beneficiary rights in any Person or entity not a party to this Agreement except as provided below." All of Steward's employment-related obligations preceded § 13.8. In § 13.10, the parties agreed that "[f]or purposes of [QMC]'s enforcement of this Agreement, [QMC] shall be deemed to include any successor or assign of [QMC] or any authorized representative of [QMC]'s bankruptcy estate." QMC's employees were not included in the list of those given enforcement rights.

Section 1.1 of the APA broadly defined "Person" to include "any individual." We also note that neither § 5.14(c) nor any other provision of the APA provided the employees with a right of action against Steward.